**Thomas BREWSTER, Plaintiff—Appellee,**

v.

**SHASTA COUNTY, a public entity, Defendant,**

**and**

**Brad McDannold, an individual; D. Compomizzo, an individual, Defendants—Appellants.**

No. 00–17105.

D.C. No. CV–98–02157–LKK.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2001.

Decided Dec. 28, 2001.

Before HALL, WARDLAW, and BERZON, Circuit Judges.

### MEMORANDUM [1]

### BACKGROUND

Plaintiff Thomas Brewster ("Brewster") was charged in California State Court with the murder of Terry Arndt and the sexual assault of Sherri Gillaspey. During his trial, exculpatory DNA evidence was discovered, and the charges against him were dismissed. Brewster then filed the instant action under 42 U.S.C. § 1983 in federal district court against the investigating detectives (Brad McDannold and D. Compomizzo), the Shasta County Sheriff's Department, the County of Shasta, and the California Department of Justice. Defendants moved for summary judgment, contending, among other things, that detectives McDannold and Compomizzo were entitled to qualified immunity from Brewster's claims for damages, and that the County was not liable under § 1983 for the sheriff's actions.

---

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

On September 21, 2000, the district court entered an order denying the defendants' motion for summary judgment as to the detectives' claim of qualified immunity.[2] Defendants then filed this interlocutory appeal. Because the parties are familiar with the facts of the case, we recount the facts here only as necessary to explain our ruling.

## DISCUSSION

### I.  Jurisdiction

▆▆▆ Brewster argues that defendants' appeal of the district court's denial of their motion for summary judgment based on qualified immunity is premature. While this court has jurisdiction to consider an interlocutory appeal where the ground for the motion is qualified immunity, the court's jurisdiction "generally is limited to questions of law and does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact." *Jeffers v. Gomez,* 267 F.3d 895, 903 (9th Cir.2001) (as amended). Brewster argues that this appeal is premature because the district court's decision was based on factual issues, not purely questions of law. "Where disputed facts exist, however, [the court] can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct." *Id.* This court thus has jurisdiction to review the detectives' claims of qualified immunity by resolving all factual disputes in Brewster's favor. *See id.*

### II.  Law Governing Qualified Immunity

A court required to rule upon qualified immunity of a government official must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If the court determines that a favorable view of plaintiff's alleged facts show that the official's conduct violated a constitutional right, the next step is to ask whether such right was clearly established; this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* This court must ask: (1) Was the law governing the official's conduct clearly established?  (2) Under that law, could a reasonable official have believed his conduct was lawful? *Jeffers,* 267 F.3d at 910 (citing *Browning v. Vernon,* 44 F.3d 818, 822 (9th Cir.1995)).

### III.  Suggestive Identification Procedures

▆▆▆ Brewster argues that the detectives violated his due process right to a fair trial by conducting an unnecessarily suggestive photo identification and live lineup.  He makes the related argument that as the detectives obtained an arrest warrant based on tainted identifications, they arrested him without probable cause.

#### A.  Collateral Estoppel

Defendants first argue that because the legality of the photo array and live line-ups was previously litigated in California Superior Court during Brewster's criminal proceedings, Brewster is collaterally estopped from raising the issue in his § 1983 claim. At his criminal trial, Brewster moved to suppress Gillaspey's pretrial and in-court

---

**2.** The district court also issued a separate opinion denying defendants' motion for summary judgment brought on the ground that the county could not be liable under Section 1983 because a sheriff is not a "person" within the meaning of that statute.  We analyze defendants' appeal of that result in a contemporaneously filed opinion.

identifications of him. The court denied his motion. Relevant to this case, the court addressed whether the conversation between Gillaspey and McDannold in the car on the way to the live lineup made the lineup unnecessarily suggestive. The court also addressed whether Compomizzo's introduction of "the suspect's lawyer" to Gillaspey before the lineup made the lineup unnecessarily suggestive. The court did not address any comments made by the deputies during the 1995 photo array.

In *Allen v. McCurry,* 449 U.S. 90, 103, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that collateral estoppel may apply when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings. This court gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered. *See* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 80, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

In order for the doctrine of collateral estoppel to apply under California law, there must be a final and binding judgment. *Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990). Suppression rulings, if not followed by a conviction or an acquittal, are not final judgments under California law and therefore are without preclusive effect in a subsequent civil suit. *Heath v. Cast,* 813 F.2d 254, 258 (9th Cir.1987); *see also Lombardi v. City of El Cajon,* 117 F.3d 1117, 1121 (9th Cir.1997); *Ayers v. City of Richmond,* 895 F.2d 1267, 1272 (9th Cir.1990). Here, the criminal charges brought against Brewster were dismissed before his trial was concluded.

Thus, because there was no final judgment for collateral estoppel purposes, Brewster is not precluded from relitigating the legality of the identification procedures. *See id.*

**B.** Failure to Specify the "Clearly Established Right" and Failure to Determine Whether Defendants Could Reasonably Have Thought Their Conduct Was Lawful

Defendants argue that the district court erred by failing to identify the "clearly established right" violated by their suggestive conduct in relation to the photo array and live lineup.

The district court held that Brewster alleged a due process violation based on his allegations that Defendants "intentionally engaged in suggestive behavior prior to and during the photo array and the live lineup," leading to a false identification. Order at 14 (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The court further held that because Brewster alleged that Defendants intentionally violated his due process rights, they were not entitled to qualified immunity. *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Defendants argue that because "there are no clear-cut rules regarding the specific 'do's and don'ts' of line-up procedures," Brewster has not shown a violation of clearly established law. While it is true that "[u]nlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest," *Manson,* 432 U.S. at 113 n. 13, 97 S.Ct. 2243, Brewster alleges that the detectives used suggestive procedures with the intent of

obtaining an identification of him, irrespective of whether he was in fact guilty. It is clearly established that a suggestive procedure intended to produce a false identification would violate Brewster's constitutional rights. *See Devereaux v. Abbey,* 263 F.3d 1070, 1074–75 (9th Cir.2001) (en banc). Here, the evidence reasonably supports a conclusion that the detectives manipulated the identifications intending to produce a false identification.

■ Defendants also argue that the district court erred by failing to find whether a reasonable official could have thought their conduct was lawful. The district court held, however, that qualified immunity was unavailable because Brewster alleged that the detectives intentionally violated his due process rights. Officials are not entitled to qualified immunity for intentional constitutional violations. *See Anderson,* 483 U.S. at 638, 107 S.Ct. 3034.

### C. Fourth Amendment Claim

■ Brewster also claims that he was arrested without probable cause in violation of his Fourth Amendment rights. In such a case, an officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Where the warrant application is based on evidence fabricated by the officer seeking the warrant, the officer can have no reasonable belief that the application is based on probable cause and immunity is unavailable. *See Olson v. Tyler,* 825 F.2d 1116, 1121 (7th Cir.1987) (finding no qualified immunity where the officer intentionally omitted exculpatory evidence from the warrant application). In such cases, the fact that a magistrate issued an arrest warrant based on the fabricated evidence does not release the officers from liability. *See Malley,* 475 U.S. at 345, 346 n. 9, 106 S.Ct. 1092; *Olson,* 825 F.2d at 1121; *see also Smiddy v. Varney,* 665 F.2d 261, 267 (9th Cir.1981) (ruling that "the presentation by the officers to the district attorney of information known by them to be false will rebut the presumption" of qualified immunity).

■ As stated above, the evidence supports a conclusion that the detectives manipulated Ms. Gillaspey into identifying Brewster without regard to the reliability of the identification. A magistrate could not have found probable cause to arrest Brewster without the identification, and Defendants do not claim that there would have been probable cause without it. Therefore, the district court's denial of summary judgment on Defendants' qualified immunity was proper.

### IV. Failure to Obtain DNA Tests of the Victim's Clothing

■ Defendants also argue that the district court erred by treating Brewster's claim regarding the failure to obtain DNA tests of Ms. Gillaspey's clothing as a suppression of exculpatory evidence claim under *Brady v. Maryland,* 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. In this case, however, there is no evidence that the detectives suppressed the existence of Ms. Gillaspey's clothing, failed to disclose relevant police reports or laboratory reports regarding the clothing, or denied Brewster

access to the clothing. Instead, the evidence shows only that the detectives failed to obtain tests, the results of which would have exonerated-and eventually did exonerate-Brewster. Brewster's claim thus is not that the detectives suppressed evidence in their possession, but that they failed to develop additional evidence that would have exonerated Brewster. So construed, Brewster's claim falls under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), which held that the failure to preserve and/or test evidence is actionable if the conduct was motivated by "bad faith." *Id.* at 57, 109 S.Ct. 333. *See also Villafuerte v. Stewart,* 111 F.3d 616, 625–26 (9th Cir.1997) (finding no due process violation where failure to test a semen sample was not in bad faith).

■ Here, Brewster has produced "specific, nonconclusory factual allegations" that the detectives acted in bad faith. *Jeffers,* 267 F.3d at 907 (to prevail on a motion for summary judgment, plaintiff must "put forward specific, nonconclusory factual allegations that establish improper motive.") (internal quotations and citations omitted). Specifically, the sheriff's department neglected to tell the Department of Justice laboratory that the victim had picked up the clothes, an act which allowed for transfer of seminal fluid to the blouse. Nor did anyone from the sheriff's department return the laboratory's telephone calls. There is also testimony that could lead to the conclusion that the detectives ignored key alibi evidence. Moreover, the transcript of the detective's conversation with the victim, along with the suggestive identification procedures, indicate that the detectives had a preference toward finding that Brewster committed the crime. Additionally, the jury could infer that bad faith affect the entire investigation, including the failure to test the clothes.

Thus, while the failure to obtain DNA tests of the victim's clothing does not implicate an independent clearly established constitutional right, it is further circumstantial evidence of improper motive.

## CONCLUSION

For the foregoing reasons, the detectives are not, for purposes of a summary judgment motion, entitled to qualified immunity.

AFFIRMED.