# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2010

No. 09-10341

Charles R. Fulbruge III
Clerk

DONALD WAYNE GOOD,

Plaintiff-Appellee

v.

FRED CURTIS, individually and in his official capacity,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant's Motion for Panel Rehearing is DENIED. This opinion is substituted in place of the prior opinion, *Good v. Curtis*, __ F.3d __, 2010 WL 550520 (5th Cir. Feb. 18, 2010).

Appellee Donald Wayne Good brought suit under 42 U.S.C. § 1983 against Appellant Fred Curtis, alleging that Curtis violated Good's rights under the Fourth and Fourteenth Amendments when he manipulated a photographic lineup in an effort to procure a false identification from the victim in a rape case. Curtis takes this interlocutory appeal from the district court's denial of his motion for summary judgment on the basis of qualified immunity. The only

issue before us today is whether Curtis is entitled to qualified immunity with regard to the alleged violations of Good's Fourth and Fourteenth Amendment rights. On this limited appeal, we conclude that the district court correctly determined that the genuine issues of fact regarding Curtis's conduct were material to the denial of qualified immunity and, therefore, DISMISS the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case, viewed in the light most favorable to Good as the non-moving party, are as follows. On June 18, 1983, Good was arrested and charged with aggravated rape, aggravated robbery, and burglary of a habitation. After no less than three trials, Good was wrongfully convicted and sentenced to life imprisonment. After serving thirteen years, seven months, and five days in prison, Good was finally exonerated by DNA evidence on December 22, 2004.

Good's long and unfortunate path through the legal system began on June 9, 1983, when a man entered the Irving, Texas home of Jane Doe, bound her and her eight-year old daughter and forced Doe to the bedroom, where he raped her. Shortly after the man left, Doe was able to free herself and her daughter and called the Irving Police Department. The crime scene was subsequently processed for evidence. At the same time, a local hospital examined Doe and administered a rape kit. Later that day, Doe met with police and described her assailant as a white male in his twenties, six feet tall, about 190 pounds, clean shaven, with a medium to large build, blondish-brown hair, and dark tan skin tone. Based on Doe's description, a composite sketch of the perpetrator was prepared and then distributed throughout the Irving Police Department.

On June 15, 1983, Good was arrested in an unrelated incident stemming from a bond forfeiture on a prior DWI charge. Curtis, who was not assigned to the investigation of Doe's rape, had suspected Good was responsible for certain unsolved daytime burglaries in Irving. Accordingly, Curtis brought Good to his

office for the purpose of interviewing him about the unsolved burglaries. During the interview, Curtis became angry with Good when he would not provide any information on the burglaries. Curtis pulled out a copy of the composite sketch in the Doe case and informed Good that he looked somewhat similar to the assailant and that, if Good did not think the picture looked like him, Curtis would "fix it" to make sure that it did.

When Good persisted in his refusal to address the unsolved burglaries, Curtis told Good he was going to get him charged with Doe's rape and took Good outside of his office to photograph him for a lineup. Curtis proceeded to take several pictures of Good. He repeatedly altered the light settings on the camera with each picture in an effort to make Good's photograph better match the "dark tan" skin tone of the suspect in the police sketch. Once satisfied with the resulting photograph, Curtis added it to a lineup and separately presented it to Doe and her daughter. Doe's daughter was unable to make an identification. Doe, on the other hand, immediately selected Good out of the lineup. She became very emotional upon seeing Good's photograph and identified him as her attacker. As a result, Good was rearrested on June 18, 1983, and charged with aggravated rape, aggravated robbery, and burglary of a habitation.

After Doe's identification of Good in the photographic lineup, a live lineup followed on July 26, 1983, conducted by the Dallas County Sheriff's Department. The participants in the lineup were given specific phrases that the perpetrator used during the home invasion to repeat during the lineup. Doe again, and her daughter for the first time, identified Good as the perpetrator.

Good's first criminal trial, in 1983, ended in a hung jury. His second trial, in 1984, resulted in a guilty verdict, but the verdict was later overturned because of prosecutorial misconduct unrelated to the photographic lineup. In 1987, the government tried Good for a third time, and he was convicted of burglary of a

habitation with intent to commit rape. In each of the criminal trials, both Doe and her daughter identified Good as the attacker.

In 2001, the Dallas County Criminal District Court No. 3 granted Good's motion for post-conviction DNA testing of the biological evidence from the crime scene. The DNA test ruled Good out as Doe's attacker. Based on this new finding, the Texas Court of Criminal Appeals granted Good's state habeas petition and vacated his sentence on November 17, 2004, followed by the Dallas County Criminal District Court No. 3's dismissal of all charges on December 22, 2004.

On November 17, 2006, Good filed a complaint in the U.S. District Court for the Northern District of Texas against the City of Irving; the Irving Police Department; the Chief of Police for the City of Irving, individually and in his official capacity; and Curtis, individually and in his official capacity, under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and article I, section 19 of the Texas Constitution. In March 2007, the district court dismissed all claims against the Irving Police Department, the Irving Chief of Police, in his official and individual capacities, and Curtis, in his official capacity. On June 1, 2009, the district court also dismissed all claims against the City of Irving and the claims against Curtis, in his individual capacity, based on alleged violations of Good's First, Fifth, Sixth, Eighth and Ninth Amendment rights.

Still, the district court did not entirely dismiss Good's case. The district court denied Curtis's motion for partial judgment on the pleadings and motion for summary judgment as to Good's claims based on alleged violations of the Fourth and Fourteenth Amendments as well as article I, section 19 of the Texas Constitution because genuine issues of fact existed as to whether Curtis was entitled to qualified immunity. This interlocutory appeal followed with regard

No. 09-10341

to Curtis's qualified immunity defense in connection with Good's claims under the Fourth and Fourteenth Amendments.

## II.  STANDARD OF REVIEW

"[A]n order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)) (citation omitted).  This jurisdiction includes interlocutory appeals from denials of motions for summary judgment.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251 (5th Cir. 2005) (citing *Behrens*, 516 U.S. at 307); *see also* 28 U.S.C. § 1291.

The limitation of our interlocutory appellate jurisdiction to questions of law prohibits our "consider[ation] [of] the correctness of the plaintiff's version of the facts." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quotation omitted).  In other words, "[t]he essentially legal [immunity] question, which we treat as an entitlement distinct from the merits of the case, is appealable only to the extent that it turns on an issue of law[.]" *Atteberry*, 430 F.3d at 252 (second alteration in the original) (quotations omitted).

This means that the district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal. *Johnson v. Jones*, 515 U.S. 304, 313 (1995).  But the district court's determination that a particular dispute is *material* is a reviewable legal determination. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003).  "Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (quotation omitted).

Within this limited appellate jurisdiction, "[t]his court reviews a district court's denial of a motion for summary judgment on the basis of qualified

No. 09-10341

immunity in a § 1983 suit de novo." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Freeman*, 483 F.3d at 410); *see also Club Retro*, 568 F.3d at 194; *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

## III. DISCUSSION

Good contends that his Fourth and Fourteenth Amendment rights were violated when Curtis manipulated Good's picture to create an inaccurate photo lineup in an effort to procure a false identification. Specifically, Good claims that: (1) this intentional effort to cultivate an irreparable misidentification constitutes a violation of due process, and (2) Curtis secured the subsequent charges leading to Good's conviction without probable cause. We address both claims in turn.

### A. Good's Fourteenth Amendment Claim

We turn first to the question of whether a concerted effort on the part of a police officer to "frame" a suspect by manipulating a photo for a photo lineup to produce a false identification from an eyewitness constitutes a violation of the due process rights secured by the Fourteenth Amendment and whether such a violation was clearly established at the time Curtis acted. Thus applying the rubric of qualified immunity, we find that such conduct would constitute a violation of the Fourteenth Amendment and that any officer so acting would not be entitled to qualified immunity. Accordingly, Good has raised a genuine issue of material fact sufficient to overcome summary judgment on his Fourteenth Amendment claim.

Curtis relies upon cases which involve a test designed primarily to suppress evidence where an identification may be questionable but has not been disproved to assess the constitutionality of his actions. However, this case concerns a situation where the criminal defendant has been exonerated and was wrongly convicted because – taking the facts most favorable to Good – a police officer deliberately framed him. The DNA evidence that cleared Good and

6

secured his freedom also removes all doubt as to the inaccuracy of Doe's identification. The reason for the misidentification, we must assume at this summary judgment juncture, was Curtis's concerted efforts to manipulate the photo. The Supreme Court's "suggestive lineup" suppression test announced in *Manson v. Brathwaite*, 432 U.S. 98 (1977), is not designed for and does not apply in the context of a § 1983 suit following DNA exoneration for a conviction derived from police conduct intentionally designed to procure a false identification by unlawful means.

As directed by our decision in *Geter v. Fortenberry*, 882 F.2d 167 (5th Cir. 1989) (*Geter II*), we conclude that a police officer's knowing efforts to secure a false identification by fabricating evidence or otherwise unlawfully influencing witnesses is not entitled to qualified immunity. *See also Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc) ("[W]e are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Brewster v. Shasta County*, 27 F. App'x 908, 912-13 (9th Cir. 2001) (unpublished) (applying *Devereaux* where "the detectives used suggestive procedures with the intent of obtaining an identification of [the plaintiff], irrespective of whether he was in fact guilty"). Because we now know without a doubt that Doe's identification was actually incorrect, we need not analyze whether, hypothetically, this lineup suffered from a high "likelihood of misidentification." *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (originating the factors used in *Brathwaite* analysis as aids in assessing the "likelihood of misidentification" under a totality of the circumstances review).

Our analysis of Good's Fourteenth Amendment claim is instead guided by our decisions in *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) (*Geter I*), and *Geter II*. Both *Geter* cases involved a § 1983 action stemming from an individual's arrest, prosecution, and conviction for a robbery he did not commit.

In *Geter I*, we held that "a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means . . . for such activity violates clearly established constitutional principles." 849 F.2d at 1559. Nonetheless, we found the plaintiff's allegations to be too conclusory and remanded the matter to the district court for further factual development. *Id.* at 1559-61. On remand, the plaintiff set forth "a wealth of specifics and confirming factual details" supporting his claim that the officers had framed him. *Geter II*, 882 F.2d at 170. Notwithstanding the fact that we acknowledged *Brathwaite* in both *Geter I* and *II*, neither opinion expressly required or even suggested that the district court was obligated to apply *Brathwaite*'s "suggestive lineup" suppression test to the plaintiff's claim under those facts. *See Geter I*, 849 F.2d at 1559; *Geter II*, 882 F.2d at 170 n.6. Instead, in *Geter II*, we ultimately held that the plaintiff created genuine issues of material fact sufficient to overcome qualified immunity by presenting competent summary judgment evidence as to which witnesses were encouraged to give false identifications and what means were used to encourage the witnesses to wrongly identify the plaintiff. 882 F.2d at 170.

Applying *Geter I* and *II* to the instant case, Good has clearly met his burden at this early stage. Good alleged that Doe's identification was tainted by Curtis's conduct. That taint persists to this day as Doe still insists on Good's guilt even after his exoneration by indisputable forensic evidence. Moreover, Good has provided "specifics and confirming factual details" regarding the alleged "unlawful means": (1) Curtis stated he planned to frame Good for failing to cooperate; (2) Curtis artificially manipulated Good's photograph to conform to the composite sketch and description of Doe's assailant by darkening the pictures he took; and (3) Curtis knowingly presented the altered photograph with the purpose of obtaining a false identification as retaliation for Good's non-cooperation regarding a wholly unrelated crime. Good's articulation of these

8

No. 09-10341

allegations through competent summary judgment evidence is sufficient to create a factual basis[1] for finding a constitutional violation within Good's Fourteenth Amendment § 1983 claim.

Having found a constitutional violation, we turn briefly to the second prong of qualified immunity. The Supreme Court has repeatedly held that "government officials performing discretionary functions [enjoy] qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Stated more pointedly, qualified immunity generally protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In the instant case, Curtis is alleged to have intentionally secured a false identification that produced a wrongful conviction in retaliation for a suspect's failure to cooperate in an unrelated matter – a *Malley* "knowing violation of the law."

Finally, we turn to Curtis's novel argument that the trial court's subsequent approval of the fabricated lineup absolves him of responsibility for the unfair trial and wrongful conviction it produced. Curtis does not cite any case from this circuit involving the so-called "neutral intermediary" doctrine in the Fourteenth Amendment context. That said, and though we do not attempt to affirmatively extend the doctrine to this context today, we find our jurisprudence in this area as applied to other constitutional protections instructive in determining whether Curtis's alleged malfeasance effectively preserved the causal chain. We explained in *Hand v. Gary*, 838 F.2d 1420, 1428

---

[1] As was the case in *Geter II*, our articulation of this "factual basis" is only established here for the purpose of considering Curtis's motion for summary judgment. "The ultimate truth will be determined at trial, and we intimate no view as to whose version of the facts eventually will prevail." *Geter II*, 882 F.2d at 171 n.10.

(5th Cir. 1988), that "[a]n independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." Moreover, "[a]ny misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Id.* As such, to the extent that this doctrine applies to the Fourteenth Amendment, Curtis's failure to disclose that he manipulated the lineup or that Doe's resulting testimony may have been tainted preserved the causal chain.

Accordingly, the district court correctly denied summary judgment on the Fourteenth Amendment claim. As such, the appeal as to this claim must be dismissed. *See Lytle v. Bexar County Tex.*, 560 F.3d 404, 408-09 (5th Cir. 2009) (where appellate court determines that factual dispute is material, dismissal of the interlocutory appeal is appropriate), *cert. denied*, 78 U.S.L.W. 3447 (U.S. Mar. 22, 2010) (No. 09-851).

### B. Good's Fourth Amendment Claim

Much of Curtis's Fourth Amendment briefing on appeal has addressed issues well beyond the scope of our limited interlocutory review. "[W]e have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc). More specifically, our review of a denial of summary judgment based on qualified immunity is limited exclusively to the question of whether "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.* at 346; s*ee also Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly

10

violated by the defendant were clearly established at the time of the challenged actions . . . ."). Accordingly, we cannot and do not reach the question of whether Good alleges a claim of false arrest or malicious prosecution nor do we address the various arguments about waiver by judicial admission or timeliness under *Wallace v. Kato*, 549 U.S. 384 (2007), in the context of this interlocutory appeal.

Turning to the questions properly before us, we conclude that Curtis is not entitled to qualified immunity on Good's Fourth Amendment claims. Contrary to Curtis's arguments, "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example . . . and some such claims may be made under 42 U.S.C. § 1983." *Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) (en banc). "As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004)). Contrary to Curtis's assertions, Good was not merely subjected to "[a]n additional lock on the door of a jail cell . . . ." Instead, the statement of undisputed summary judgment facts makes clear that Good was arrested on two different warrants on two different dates. Good was first arrested on June 15, 1983, on a bond forfeiture on a prior DWI charge. During the June 15 detention, Good was interrogated by Curtis and the photos at the heart of this case were taken. On June 18, 1983, Good was arrested for the rape and burglary of Doe on a warrant issued upon Curtis's probable cause affidavit. This second arrest forms the foundation of Good's Fourth Amendment claim. At the time he swore out the probable cause affidavit for the second arrest, Curtis had no evidence before him suggesting Good was the perpetrator other than the false identification he procured from Doe. Accordingly, Curtis could not have reasonably believed that he had probable cause to arrest Good,

11

No. 09-10341

and the district court did not err in determining that the genuine issues of fact were material such that he is not entitled to summary judgment on qualified immunity in the instant case.[2]

## IV. CONCLUSION

In keeping with *Geter I* and *II*, we conclude that knowing efforts to secure a false identification by fabricating evidence or otherwise unlawfully influencing witnesses constitutes a violation of the due process rights secured by the Fourteenth Amendment.  A plaintiff need not undertake the impossible task of satisfying the *Brathwaite* test where an officer's intentional conduct was designed to artificially produce precisely the sort of witness certainty that otherwise justifies the admission of suggestive lineups and the criminal defendant has been exonerated in the meantime.  Moreover, we find that any reasonable official would know that framing an individual for a crime they did not commit by securing such an identification represents a constitutional violation.  Accordingly, the appeal must be dismissed on his Fourteenth Amendment claim.

With respect to the Fourth Amendment, Curtis's efforts to secure Good's arrest notwithstanding the fact that Curtis affirmatively knew he manufactured probable cause constituted a clearly established violation of Good's Fourth Amendment rights at the time of the arrest such that the appeal on this claim must also be dismissed.

For the foregoing reasons, we DISMISS and REMAND.

---

[2] Again, we note that we do not reach the question of whether Good has stated a claim upon which relief may be granted if he has, as Curtis alleges, conceded his false arrest claim. Given our narrow jurisdiction, we merely address the dual questions of whether Curtis's conduct, as alleged, constituted a violation of Good's Fourth Amendment rights and whether a reasonable official would have known that such conduct was prohibited.

12

No. 09-10341