**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2012

Lyle W. Cayce
Clerk

No. 11-30423

RESA LATIOLAIS

Plaintiff-Appellee

v.

DONALD CRAVINS, SR.; CLAUDETTE GALLOW

Defendants-Appellants

Appeals from the United States District Court
for the Western District of Louisiana
(09-CV-18)

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This is an appeal from the district court's denial of summary judgment on the defense of qualified immunity in an action for damages under 42 U.S.C. § 1983 involving a child custody matter. Because we find that there is sufficient evidence to raise a genuine dispute of material fact on the issues of qualified immunity before us on appeal, we AFFIRM the district court's denial of Officer Roylis "Ricky" Gallow's and Senator Donald Cravins, Sr.'s motions for summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30423

## FACTS AND PROCEDURAL HISTORY[1]

This action arises from a bitter custody dispute over Cole, the minor son of Resa Latiolais and Bradley Griffith. Latiolais and Griffith were never married, but were involved in a relationship for almost fourteen years. Cole was born on November 19, 2001, and resided exclusively with Latiolais.

On October 5, 2005, Griffith filed a petition to establish paternity and for sole custody. This action was filed shortly after Latiolais, Cole, and Lana, who was Latiolais' minor daughter from a previous marriage, evacuated from Hurricane Rita with Latiolais' boyfriend, Gregory Chappell, whom she later married. Griffith's petition asserted that Latiolais had "lately not made choices which are in the child's best interest." On October 10, 2005, Latiolais reconvened against Griffith, seeking custody and an order of child support.

Thereafter, Griffith began a conspiracy to prove her unfit through arrests, criminal prosecutions, coercion of Lana to make false allegations of child abuse, removal of Cole from the home on false allegations of child abuse, and other actions. Specifically, between October 5, 2005, and December 8, 2005, Griffith caused Latiolais to be investigated for food stamp fraud, investigated by the Office of Community Services (OCS) for child abuse on two occasions, confronted by police officers on several occasions, reported for criminal damage to property, and charged with simple battery. Further, in "July 2006, she was harassed to the point of seeking court intervention, had retaliatory restraining orders taken against her, and she was arrested for aggravated assault." Latiolais provides further detail in her brief of Griffith's activities, much of which is not repeated here for the sake of brevity. However, there are two incidents most relevant to these appeals.

---

[1] As discussed herein, this court has limited appellate jurisdiction and must assume Latiolais' version of the facts are true. *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010).

No. 11-30423

Without Latiolais' knowledge, Griffith began meeting with Lana, then sixteen years old, in October 2005. These meetings were arranged through Lana's schoolmate, Jessica Harbin, who was the daughter of Jan Huffman. Griffith's involvement with Huffman and Harbin is documented throughout the briefs and record. Latiolais asserts that Griffith asked Harbin to assist him in turning Lana against Latiolais, and that, as a result, Lana acted "incorrigibly to the point that on October 25, 2005, Resa ended up slapping Lana." Lana told Huffman the following day and Huffman convinced Lana to report her for child abuse. Huffman and Harbin then took Lana to the Carencro Police Department, where Griffith met them. Chief Carlos Stutes determined that the matter was actually within the jurisdiction of the Lafayette Parish Sheriff's Department, who he then called. Deputy Dirk Campbell, who is the boyfriend of Huffman's daughter, Danielle, was dispatched, interviewed Lana and left her in Huffman's care. Huffman, Harbin, Griffith and Lana then went to a Mexican restaurant where the sheriff's department was called a second time. Deputy Campbell met the parties at the restaurant. Lana then reported that Latiolais abused Cole. Huffman then took Lana to one of Griffith's businesses, where she received clothes, a new cell phone, some money and the promise of the use of a limousine for her graduation. Deputy Campbell then called OCS to report the abuse and Cole was removed from Latiolais' care that night and put in Griffith's care.

Two days later, OCS determined there had been no abuse and instructed that Cole be returned to Latiolais' care. Deputy Alex Montgomery advised Griffith that he had to return Cole to Latiolais and dispatched two officers to oversee the exchange. Griffith's private investigator secretly photographed the exchange, during which Griffith was "screaming irately in the parking lot and making quite a scene."

In early November, 2005, Latiolais obtained an Order of Protection on behalf of Lana after learning about the contact with Griffith, Huffman and

3

No. 11-30423

Harbin. The trial court issued the restraining order, prohibiting Griffith or any third party acting on his behalf from contacting Lana.

On November 30, 2005, Griffith was to return Cole from visitation to Latiolais at a fast-food restaurant at 7:30 a.m. so she could take him for a test at Opelousas General Hospital. Griffith failed to show up and Latiolais began calling his cell phone but he did not initially answer. Once Griffith answered, he told her he was already at the hospital with Cole. Upon Latiolais' arrival at the hospital, she was unable to locate Griffith or Cole. Still unable to find Cole or Griffith, who continued to say that he was already at the hospital, Latiolais recruited assistance from Opelousas Police Officer Roylis "Ricky" Gallow[2] ("Officer Gallow"), who she observed in the hospital talking on his cell phone.[3] Officer Gallow indicated that he was waiting for Latiolais. As Latiolais and Officer Gallow turned to find Griffith, they saw Griffith, Cole and Cindy Hebert, who was in a long-term relationship with and also had a child with Griffith.[4] Hebert had previously been prosecuted and served probation for threatening to kill Latiolais. Latiolais took Cole from Griffith and then pushed Hebert out of her way to proceed to the lab. Upon Hebert's insistence, Officer Gallow then cited Latiolais for simple battery.

At some point later, Senator Donald Cravins, Sr., called Deputy Montgomery at Griffith's request and asked him to help Griffith out on the custody case. Deputy Montgomery testified that, "[t]o me, it felt like he was a friend of mine and friend of Mr. Griffin's [sic] and he was sort of caught in

---

[2] Officer Gallow died on July 22, 2009, and was survived solely by his wife, Claudette Gallow, who was put into possession of his estate on December 2, 2009. Claudette Gallow (hereinafter "Gallow") was substituted as party defendant for Officer Gallow.

[3] As will be discussed later herein, cell phone records later established that Officer Gallow was talking on the telephone with Griffith just prior to Latiolais' arrival.

[4] The record indicates that Hebert and Griffith later broke up and Hebert then recounted details regarding Griffith's activities to Latiolais.

4

No. 11-30423

between friendships and trying to see if he could remain friends with both parties and at the same time help Mr. Griffin [sic] out." Deputy Montgomery further testified that he was angered by Cravins attempt to have him help Griffith on the custody case.

A trial on the merits of the custody matter began on August 21, 2006, and, as stated by the district court, "with interruptions, concluded on January 28, 2008." The trial court entered a written (and later modified) judgment on March 27, 2008, which ordered joint custody, but did not designate a domiciliary parent. Latiolais appealed the trial court's ruling and, on March 3, 2010, the Court of Appeal of the Third Circuit of Louisiana reversed the trial court and rendered judgment awarding sole custody to Latiolais. *Griffith v. Latiolais*, 32 So.3d 380 (La. App. 3d Cir. 2010). The Supreme Court of Louisiana granted Griffith's petition for certiorari and reversed and remanded for the district court to reconsider its joint custody plan. *Griffith v. Latiolais*, 48 So.3d 1058 (La., 2010), *clarified*, 54 So.3d 1092 (La., 2010). The trial court then reconsidered its previous joint custody award and named Latiolais the domiciliary parent. Latiolais appealed and the court of Appeal of the Third Circuit affirmed. 70 So.3d 71 (La. 2011).

On January 1, 2009, Latiolais filed an action under 42 U.S.C. Section 1983 as well as state law claims against Griffith, Officer Gallow, the City of Opelousas and Cravins. The defendants then filed individual motions for summary judgment, with Gallow and Cravins asserting the defense of qualified immunity. The United States District Court for the Western District of Louisiana, Lafayette Division, filed a Judgment and a Memorandum Ruling on March 30, 2011. The district court denied the motions for summary judgment by Griffith, Gallow and Cravins. The court granted the motion for summary judgment on the official capacity claims against the City of Opelousas and Officer Gallow, and denied the

No. 11-30423

motion as to the state pendent claims. Thereafter, Gallow and Cravins appealed. For the reasons stated herein, we AFFIRM.

## STANDARD OF REVIEW

This court reviews de novo a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The denial of a motion for summary judgment on the basis of qualified immunity is immediately appealable, to the extent that it turns on an issue of law. *Kovacic*, 628 F.3d at 211. The limitation of the interlocutory appellate jurisdiction to questions of law prohibits this court's consideration of the correctness of plaintiff's version of the facts. *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010).

> This means that the district court's finding that a genuine factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal. But the district court's determination that a particular dispute is material is a reviewable legal determination. Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.

*Id.* at 397-98. (Internal marks, citations and emphasis omitted).

## DISCUSSION

Title 42 U.S.C. Section 1983 allows a civil action for deprivation of rights and states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The summary judgment burden of proof shifts somewhat in the case of a qualified immunity defense, as follows:

> An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct.

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2002). *See also Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

When the district court denies an official's motion for summary judgment predicated upon qualified immunity, this court is essentially reviewing the district court's decision that a "certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Kinney v. Weaver*, 367 F.3d 337, 346 (2004). *See also Behrens v. Pelletier*, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

When a defendant moves for summary judgment on the basis of qualified immunity, the court must decide: 1) Whether the facts made out a violation of a constitutional right; and 2) whether that right was "clearly established" at the time of the defendant's alleged misconduct so that a reasonable official in the

No. 11-30423

defendant's situation would have understood that his conduct violated that right. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009). *See also Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993).

Before the district court, Latiolais asserted that Griffith conspired with Officer Gallow, Cravins, and others to "'deprive her of her rights to custody, control, and management of her minor son' which resulted in the actual deprivation 'of her constitutionally protected right in parenthood.'"

As found by the district court, the right of a parent to the care, custody, control and management of one's children is well established. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *See also Wooley v. City of Baton Rouge*, 211 F.3d 913, 920 (5th Cir. 2000). Also, in *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir. 1988), this court recognized "the most essential and basic aspect of familial privacy – the right of the family to remain together without the coercive interference of the awesome power of the state" in a matter involving child protective services. *Id.* at 1216.

The district court also cited the factually similar case of *Williams v. Rappeport*, 699 F. Supp. 501, 503 (D. Md. 1988). The Maryland district court granted summary judgment on the basis of absolute immunity for two court-appointed professionals, a psychiatrist and a psychologist, who were sued by a husband for their assistance in a child custody dispute. However, in doing so, the Maryland court did recognize a colorable substantive due process claim regarding the deprivation of the plaintiff's liberty interest in rearing his child. *Id.* at 504. "While the outer boundaries of the right to rear one's child are not clear, particularly when a parent's rights have not been completely terminated, [plaintiff] has alleged a violation of a liberty interest sufficient to withstand defendants' pending motion." *Id.* at 505.

The district court here then found that Latiolais had alleged a violation of her constitutional rights. Further, "[a]s it is undisputed that Roylis Gallow was

acting in his capacity as a Police Officer for the City of Opelousas and that Donald Cravins was serving as a Louisiana Senator at the time of the events at issue, plaintiff has stated a claim under section 1983."

As this right has clearly been established pursuant to the cases above, it could not cease to exist based solely on the manner in which a state actor was seeking to interfere. Thus, the district court was correct.

Once the plaintiff has alleged a constitutional violation, the next step is to decide if the right was clearly established at the time of the alleged misconduct and whether the defendant's conduct was objectively reasonable. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009). *See also Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).

To establish a civil conspiracy claim under section 1983, Latiolais must present evidence that the defendants acted jointly and that some overt act that was done in furtherance of the conspiracy resulted in the deprivation of a constitutional right. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but "a conspiracy claim is not actionable without an actual violation of section 1983." *Id.* (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

The U.S. Supreme Court has distinguished between personal- and official-capacity suits.[5] Generally, an official-capacity suit is just another way of

---

[5] Gallow appears to have some confusion regarding this. In her argument regarding Officer Gallow's immunity as a witness, she repeatedly refers to Latiolais' claims that Officer Gallow was acting in the capacity of a police officer as proof that he was not being sued in his personal capacity. The complaint did not specify which capacity, but the record clearly establishes, and the district court found, that Gallow was being sued in both capacities. Additionally, as *Hafer* states and as quoted below, a personal-capacity suit against Gallow would still seek to impose liability upon him *as a police officer* for actions taken under color of law.

pleading an action against an entity of which an officer is an agent and are treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

*Id.* (Internal marks, citations and emphasis omitted).

### *Gallow Appeal*

Gallow asserts that the basis for her motion for summary judgment is that the complaint did not allege any nor was there any actual constitutional deprivation as a result of any conduct of Officer Gallow. Thus, she asserts that there is no dispute as to at least one material issue of fact on each claim. Gallow further asserts that Officer Gallow was entitled to dismissal based on qualified immunity. Gallow is partially attempting to have this court review whether a genuine factual dispute exists. However, as stated previously, this court is prohibited from doing so and is limited to only legal issues. Notwithstanding this court's limited jurisdiction, Latiolais did allege a violation of her constitutional rights, as set out above.

Latiolais asserts that Officer Gallow used his position as a police officer to obstruct justice by helping Griffith create evidence of a battery conviction and providing perjured testimony in the custody proceeding as an allegedly unbiased witness. He did this, allegedly, to assist Griffith in establishing that Latiolais was unstable, violent, and unfit.

No. 11-30423

Officer Gallow testified at the January 19, 2006, custody hearing regarding the incident at the hospital and Latiolais' behavior, which is quoted in the Memorandum Ruling. The behavior Officer Gallow described was both bizarre and violent. Officer Gallow testified again in the custody trial on January 28, 2008, as to whether he had ever spoken to Griffith on his cell phone. Officer Gallow denied that he knew Griffith and said he had never spoken to him by telephone. However, telephone records that were introduced at trial indicate that dozens of telephone calls were made on Officer Gallow's cell phone to and from Griffith's cell phone from November 3, 2005, through December 2, 2006. Additionally, the records show an incoming call from Griffith to Officer Gallow at 7:27 a.m. and a call from Gallows phone to Griffith at 8:05 a.m. on November 30, 2005, the same morning as the hospital incident. Officer Gallow admitted that he was in possession of his phone that morning. Further, Griffith admitted in a request for admission that he knew Officer Gallow personally prior to November 30, 2005.

At the conclusion of the custody trial, which included Officer Gallow's testimony regarding the hospital incident, the court rendered judgment continuing Latiolais' limited visitation with Cole until May 2008, after which the parties would share joint custody.

As a result of this evidence, the district court found that:

> Latiolais has presented competent summary judgment evidence which establishes a genuine dispute of material fact as to whether or not Officer Gallow deprived her of her constitutional rights. Latiolais correctly observes that Gallow is not entitled to qualified immunity if she can prove that he knowingly presented false evidence in the custody hearing by denying or failing to disclose that he conspired with Griffith to set plaintiff up in a confrontational situation which was known to make her angry and combative. Viewing the evidence in the light most favorable to plaintiff, including the cell phone records of Officer Gallow and Griffith's acknowledgment of his prior relationship with Gallow,

11

> both of which controverted [Officer] Gallow's sworn testimony at the custody hearings and trial, the Court finds there exists genuine disputes of material fact.

(Citations omitted).

The district court further found that Gallow's alternative argument that Gallow is immune from civil liability as a non-party witness in the custody proceeding to be without merit. "Such immunity, however, does not protect Gallow under the allegations in this civil case in which plaintiff claims Gallow's testimony at the custody hearing is alleged to be in furtherance of a conspiracy to deprive her of the custody of her child." (Citing *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir. 1991) (Officers are not entitled to qualified immunity where plaintiff can prove they knowingly presented false information in the affidavit for his arrest warrant.).

The record establishes a genuine dispute of material facts as to whether a reasonable public official in Officer Gallow's situation would have understood that his conduct during the course of his conspiracy with Griffith violated Latiolais' right in the care, custody and control of Cole.

Gallow also asserts that all or some of Latiolais' claims are prescribed, or outside the statute of limitations. Latiolais asserts and the district court found that her claims against Officer Gallow arise out of his testimony on January 28, 2008, and that she first became aware of her claims against Cravins on January 9, 2008, during the testimony of Deputy Montgomery, both of which occurred less than one year prior to the date her lawsuit was filed on January 7, 2009. Further, the district court found that the continuing tort doctrine is applicable to Latiolais' state law claims. The record supports this finding.

### Cravins Appeal

Latiolais further claims that Cravins used his influence as a state senator when he telephoned Deputy Montgomery in an effort to assist Griffith in

depriving Latiolais of custody of Cole. Cravins argues that he is entitled to qualified immunity because his telephone conversation with Deputy Montgomery did not itself result in a constitutional deprivation and because an "unsuccessful attempt to incite conduct that could result in a deprivation of a constitutional right is not actionable" under section 1983.

Both of these arguments can be rejected by the mere fact that Latiolais asserts a section 1983 conspiracy claim against Cravins. Regardless of whether or not Cravins' actions alone actually caused a constitutional violation, liability can still be imposed on him through his alleged membership in the conspiracy. *Hale*, 45 F.3d at 920–21. To prove a conspiracy under 42 U.S.C. § 1983, a plaintiff must show: (1) "an agreement between private and public defendants to commit an illegal act," and (2) "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). In the past, we have dismissed section 1983 conspiracy claims on an interlocutory appeal from a denial of qualified immunity where the existence of a conspiracy agreement is not supported by evidence. *See, e.g.*, *Rodriguez v. Neeley*, 169 F.3d 220, 221–23 (5th Cir. 1999) (dismissing section 1983 conspiracy claims because the existence of a conspiracy agreement was supported only through "conclusory allegation[s]"). Here though, Cravins has not raised the issue of whether there is evidence establishing an agreement between him and Griffith to violate Latiolais' constitutional rights, and that particular issue is, therefore, not before us on this appeal. Thus, we decline to consider the district court's ruling on this issue and we hold that the district court's result as to Cravins is correct.[6]

---

[6] Cravins also argues that the phone conversation with Montgomery was not made under color of law. We agree with the district court that there are genuine issues of material fact about whether the conversation with Montgomery was made under color of law. *See United States v. Classic*, 313 U.S. 299, 326 (1941) (stating, in the context of a criminal civil rights prosecution, that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law"); *Manax v. McNamara*, 842 F.2d 808, 812–13 (5th Cir. 1988) (actions by

No. 11-30423

*State Claims*

Both Gallow and Cravins assert that Latiolais' state law claims should be dismissed under this court's pendent jurisdiction or on summary judgment. However, as the district court properly denied summary judgment on the 1983 claims, the argument regarding pendent jurisdiction fails because the district court still has supplemental jurisdiction under 28 U.S.C. section 1367. With regard to dismissal on summary judgment, the same analysis as used in the section 1983 conspiracy claim applies.

## CONCLUSION

There is sufficient evidence to establish a genuine dispute of material fact on the issues of qualified immunity properly raised on appeal. Thus, both Officer Gallow and Cravins are not entitled to qualified immunity on Latiolais' claim that they deprived her of her constitutional right to the care, custody, control, and management of her child. Therefore, we affirm the district court's denial of Gallow's and Cravins' motions for summary judgment.

**AFFIRMED**.

---

mayor not under color of law where there was no evidence that the mayor "employed the slightest shred of power of the mayor's office").