**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 11, 2013

Lyle W. Cayce
Clerk

No. 12-50230

X TECHNOLOGIES, INCORPORATED,

> Plaintiff - Appellee

v.

MARVIN TEST SYSTEMS, INCORPORATED, doing business as Marvin
Geotest,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This appeal arises from a breach of contract action. X Technologies ("X
Tech") alleged that Marvin Test Systems ("Geotest") breached an exclusive
teaming agreement to submit a teamed bid on a United States Air Force
("USAF") solicitation for testing equipment by teaming with another partner,
Raytheon, on a competing bid. X Tech contended that this Geotest-Raytheon
submission, which USAF selected as the winning bid, prevented X Tech from
securing the government contract with its bid. The case went to trial, and the
jury found that Geotest breached an agreement with X Tech to "exclusively team
to jointly pursue" the USAF solicitation. Based on the verdict, the district court

No. 12-50230

entered judgment in favor of X Tech in the amount of $336,000, plus attorney's fees. Geotest challenges the district court's resolution of both parties' motions for directed verdict on certain issues at the close of evidence and the jury's finding that Geotest breached its contract with X Tech. We AFFIRM the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

USAF maintains its arsenal of laser-guided Paveway II bombs at Hill Air Force Base in Utah. As the base's sole Paveway II tester was old and increasingly unreliable, USAF decided to upgrade to a new testing system, the TS-217, manufactured by Geotest. USAF's procurement group, or Source Selection Authority, issued a solicitation for the upgrade project, numbered FA8224-09-R-0104. This initial solicitation was reserved for small businesses. X Tech, a small-business government contractor with experience in developing test programs for weapons systems, elected to put together a bid.

A functional tester would consist of the TS-217 hardware with modified software and data for the Paveway II's laser guidance system, which was owned by Raytheon, the Paveway II's manufacturer. Thus, in order to bid, X Tech had to secure the hardware and gain access to the software and data. X Tech decided to reverse engineer the Raytheon data. It contacted Geotest and negotiated a teaming agreement for the hardware and access to the software (as well as the rights to modify it). After X Tech and Geotest agreed orally, Geotest confirmed the agreement in writing. The relevant portion of this agreement provides:

> This is an exclusive agreement between X-Tech and Geotest. X-Tech will submit Geotest's workshare as part of X-Tech's proposal as a response to this RFP. Geotest will not team up with any other company for solicitation FA8224-09-R-0104 except that Geotest may provide prices for the TS-217 tester only (without any software licenses, support or training) to other potential bidders.

No. 12-50230

Pursuant to the agreement, X Tech submitted a bid of $3.2 million with Geotest as a critical subcontractor.  X Tech also submitted an alternate, nonconforming bid (using a different tester than the TS-217 specified in the solicitation) on its own.

X Tech was the only bidder at the close of the solicitation period.  USAF rejected X Tech's nonconforming bid and, because its cost estimate for the project was substantially lower than X Tech's conforming bid, amended the solicitation to "full and open" to open it up to all bidders.[1]  In response to this amended solicitation, X Tech resubmitted its teamed bid with Geotest.  Geotest also submitted a bid separately from X Tech for $2.4 million.  USAF awarded Geotest the contract.

After Geotest won the contract, X Tech sued the company in state court, alleging several causes of action, including breach of contract.  Its claims centered on its contention that Geotest had teamed with Raytheon in its separate bid, violating Geotest's agreement with X Tech.  Geotest disputed this characterization of its separate bid and the nature of its relationship with Raytheon.  It argued that it was a mere licensee of Raytheon's data, not a teammate with the company itself.  Thus, Geotest contended, it merely submitted its own independent bid, which did not breach the agreement.  Geotest also raised the affirmative defense that any breach on its part was excused by X Tech's submission of its own independent bid, which Geotest alleged was a prior material breach.

Geotest removed the case to federal court on the basis of diversity and moved to transfer venue from the Western District of Texas to the Central District of California, claiming that its "Terms and Conditions," incorporated into the agreement, contained a forum selection clause for that venue.  The

---

[1] USAF had originally estimated that the project would cost $1.1 million.  It later realized that this estimate was too low.

3

district court found that the forum selection clause did not apply and denied the motion.

The case was tried to a jury. The jury heard evidence for and against X Tech's claim that Geotest teamed with Raytheon. This evidence included documents in Geotest's bid to USAF that characterized the Geotest-Raytheon relationship as a team and internal Raytheon emails reflecting the same understanding. It also included documents, such as Geotest's purchase order to Raytheon, which suggested that Geotest was merely licensing Raytheon's data.

The parties also proffered evidence on the issue of whether Geotest's conduct caused X Tech injury. X Tech submitted evidence that the testing system was a defense priority; that, had Geotest not bid, X Tech would have been the only bidder in the full and open solicitation; and that X Tech's bid and its confidence rating met USAF's requirements. X Tech also invited Michael Garner, the USAF contract negotiator, to speculate that if X Tech had been the sole bidder, USAF may have negotiated with X Tech to come to an agreement, which he did. In addition, X Tech provided evidence that USAF did not realize that X Tech's bid included USAF ownership of the reverse-engineered Raytheon data and argued that the jury could infer that USAF may have paid $3.2 for both the testing system and the Raytheon data. Geotest, for its part, presented Garner's personal knowledge that "[USAF] would not pay $3.2 million. The [Selection Authority] agreed we would not pay 3.2 million."

At the close of evidence, Geotest filed a motion for directed verdict, arguing, among other things, that the causation element of X Tech's breach of contract claim failed as a matter of law. Geotest did not move the court to enter a directed verdict that there was insufficient evidence to support a jury finding

No. 12-50230

that Geotest breached the agreement. X Tech countered with its own motion for directed verdict on Geotest's affirmative defense of prior material breach.[2]

With respect to Geotest's motion for directed verdict on causation, as well as other claims, the district court merely noted that "[f]act issues, however, remain for the jury on the remaining claims and accordingly the remainder of Defendants motion is denied." The district court, however, orally granted X Tech's motion for directed verdict on Geotest's prior material breach defense.

The jury found for X Tech on the breach of contract claims. It made three specific findings relevant to the issue. The completed verdict form read:

> QUESTION NO. 1
> Did *Geotest* and *X Technologies* agree to exclusively team to jointly pursue the Solicitation?
> Answer "Yes" or "No."
> Answer: YES
>
> . . . .
> QUESTION NO. 2
> Did *Geotest* fail to comply with the agreement?
> Answer "Yes" or "No."
> Answer: YES
>
> . . . .
> QUESTION NO. 3
> What sum of mon[e]y, if any, if paid now in cash, would fairly and reasonably compensate *X Technologies* for its damages, if any, that resulted from Geotest's failure to comply with the Teaming Agreement?
> . . . .
> Answer: $336,000 + Atty. Fees + court costs.

Geotest filed a renewed motion for judgment as a matter of law on causation and prior material breach, which the district court denied. The district court then entered final judgment in favor of X Tech and awarded it $336,000 in damages, as well as attorney's fees. Geotest appeals.

---

[2] As the parties have titled their motions on these issues as motions for directed verdict, we use their term, rather than referring to them as motions for judgment as a matter of law, as they are now known under Federal Rule of Civil Procedure 50.

## STANDARD OF REVIEW

The court reviews *de novo* a motion for directed verdict, applying the same standard as the district court. *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 292-93 (5th Cir. 2012). "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc). But "if reasonable persons could differ in their interpretations of the evidence," a determination of the issue is for the jury. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005) (citation and quotation marks omitted). The facts are viewed, and inferences made, in the light most favorable to the nonmovant. *Babcock*, 703 F.3d at 293. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (citations and quotation marks omitted). If the motion presents the district court with a pure question of law, we review the district court's resolution of that question *de novo*. *Ran-Nan Inc. v. Gen. Accident Ins. Co. of Am.*, 252 F.3d 738, 739 (5th Cir. 2001).

If, at the conclusion of the evidence, a party fails to file for judgment as a matter of law on an issue, this court "review[s] for plain error only, and . . . will not reverse the district court unless there is *no* evidence to support the jury's verdict." *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 708 (5th Cir. 2011).

No. 12-50230

## DISCUSSION

Geotest raises three issues on appeal. It challenges the district court's decisions to deny its motion for directed verdict on the issue of causation and to grant X Tech's motion for directed verdict on Geotest's affirmative defense of prior material breach. Geotest also disputes the jury's finding that Geotest breached its agreement with X Tech.[3]

*Causation*

Geotest contends that the evidence, taken in the light most favorable to X Tech, is legally insufficient to establish the causation element of X Tech's breach of contract claim. In a breach of contract case, "the absence of a causal connection between the alleged breach and the damages sought will preclude recovery." *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The plaintiff must show that its "loss is the natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). This "question of causation (foreseeability) which controls liability should be determined from the facts and circumstances of each particular case, and except where reasonable minds cannot differ, the issue is one for the jury." *Strakos v. Gehring*, 360 S.W.2d 787, 792 (Tex. 1962).

---

[3] Geotest's opening brief concludes with a one-half page argument that the panel should direct the district court on remand to transfer the case to the Central District of California. It does not include this issue in its statement of issues, FED. R. APP. P. 28(a)(5), supply a statement of the applicable standard under which the court reviews this claim, FED. R. APP. P. 28(a)(9)(B), or provide any supporting authority or record citations, other than to its motion to dismiss for improper venue, which the district court denied, FED. R. APP. P. 28(a)(9)(A). And Geotest does not mention this argument in its reply. Therefore, Geotest has waived the issue. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("[O]nly the issues presented and argued in the brief are addressed."); *see also United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) (holding that arguments that do not satisfy Federal Rule of Appellate Procedure 28 because they "merely refer[] to briefing filed with the district court" are waived).

According to Geotest, the USAF contract negotiator, Michael Garner, as a disinterested witness, gave uncontradicted and unimpeached testimony from personal knowledge at trial that precluded the jury from finding causation as a matter of law. Thus, Geotest argued that it was entitled to a directed verdict. X Tech challenges Geotest's characterization of Garner's testimony and its legal effect.

Geotest's counsel asked Garner: "Was $3.2 million within the range that you know the government would or would not pay for this project?" Garner responded: "The team would not pay $3.2 million. The [Selection Authority] agreed we would not pay 3.2 million." Geotest contends that Garner's statements "foreclose any inference that X Tech would have received the contract." In order to establish causation – that X Tech was damaged by Geotest's breach – the jury had to find that, if Geotest had not teamed with Raytheon, USAF would have awarded the contract to X Tech. Geotest argues that Garner's testimony precludes reasonable jurors from making such a finding, because USAF would not have accepted a bid at X Tech's price.

X Tech challenges Garner's testimony on three grounds. First, it suggests he was inexperienced and low-level. Second, X Tech argues that Garner was not disinterested, because Geotest paid for his travel to trial, he discussed his testimony with Geotest's counsel, and he "perhaps [had a] desire to justify the decisions of his employer." These first two arguments are without merit. Garner did not testify as an expert; he testified from personal knowledge. Being new to procurement and "serv[ing] primarily as the Air Force's point of contact for bidders" does not preclude personal knowledge. And having one's expenses compensated and discussing testimony with the party for whom one is a witness does not make a witness interested (particularly as it is unlikely that he will have the opportunity to make serving as a witness a recurring occasion).

Moreover, it is unclear what USAF decision X Tech believes Garner was attempting to justify – choosing the most cost-effective bid?

X Tech does offer a third argument for why Garner's testimony was not binding on the district court when it considered Geotest's motion for directed verdict: it contends that Garner was impeached.  X Tech points out that, on cross-examination at trial, Garner said that he expected X Tech to provide cost and pricing information after its first bid, even though the solicitation was going to be competitively bid again to a full and open group.  X Tech's counsel then showed Garner a copy of his deposition transcript, where Garner said that he did not expect X Tech to provide the data under such circumstances.  X Tech argues that this exchange was sufficient to impeach Garner.

X Tech also contends that, even if the district court was required to take Garner's testimony as true, there was still enough evidence to support the court's conclusion that a reasonable jury could find that Geotest's breach caused X Tech to lose the contract.  First, the jury heard evidence that the testing system was important to national defense priorities.  Second, it heard that absent Geotest's bid, X Tech would have been the only bidder in the largest possible pool of bidders (full and open).  Third, it was told that X Tech's proposal met the solicitation's technical requirements, and USAF gave the company a Satisfactory Confidence rating, indicating it believed X Tech could fulfill the contract.  Fourth, Garner speculated that if USAF had not accepted Geotest's bid, it might have decided to go into formal discussions with bidders, and, if it had decided to do that, it would have negotiated with X Tech.  According to X Tech, the jury could infer that these negotiations would be successful and USAF would eventually award X Tech the contract.  Finally, the jury heard evidence that USAF did not realize that X Tech's bid included ownership of the reverse-engineered Raytheon data, and, X Tech argues, the jury could infer that USAF

No. 12-50230

might have been willing to pay $3.2 million if it had received both the new testing system and the Raytheon data.

This evidence, taken in the light most favorable to X Tech, along with X Tech's impeachment of Garner, creates an issue of fact concerning causation. There are sufficient facts for the jury to infer that, had Geotest not submitted the winning bid with Raytheon, X Tech (1) would have been awarded the contract at its bid price of $3.2 million – if it either disbelieves Garner because he was impeached or believes that USAF would have paid the bid price for both the testing system and the reverse-engineered data – or (2) would have taken the $3.2 million bid as a starting-off point and successfully negotiated the contract.    Therefore, the district court properly denied Geotest's motion for directed verdict on the issue of causation.

*Prior material breach*

Geotest argues that the district court erred in determining that X Tech did not commit a prior material breach of the agreement by submitting its separate bid.  If X Tech had committed such a breach, Geotest would not be liable for its breach, because "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). "Whether a party has breached a contract is a question of law for the court." *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied).  "The court determines what conduct is required by the parties," and, to the extent the parties dispute whether or not they have performed that conduct, the court submits that factual dispute to the jury. *Id.*  "Conversely, when facts are undisputed or conclusively established, there is no need to submit issues thereon to the jury." *Id.*  Whether a breach is material is a question of fact. *See, e.g.*, *STR Constructors, Ltd. v.*

10

No. 12-50230

*Newman Tile, Inc.*, — S.W.3d — , 2013 WL 632969 at *2 (Tex. App.—El Paso Feb. 20, 2013, no pet. h.).

Here, the parties do not dispute X Tech's conduct. They only dispute whether that conduct constitutes a breach of their agreement, and whether such a breach is material. Whether X Tech committed a prior breach is a question of law, which the court addresses *de novo*. Although the agreement requires Geotest, not X Tech, to refrain from "team[ing] up with any other company for [the] solicitation," it also provides that "X-Tech will submit Geotest's workshare as part of X-Tech's proposal as a response to [the solicitation]." According to Geotest, under the plain language of this provision, X Tech promised to submit only one bid, a bid that would include Geotest's workshare. As X Tech submitted two bids, one of which did not include Geotest's workshare, Geotest argues that X Tech breached the agreement. Geotest maintains that it regarded X Tech's exclusivity as the agreement's "key benefit," contending that there was no other incentive for Geotest to grant X Tech exclusivity.

X Tech counters that the unambiguous language of the agreement limits Geotest's ability to team, but places no such explicit limit on X Tech. Under X Tech's interpretation, the agreement merely required X Tech to submit Geotest's workshare as "a response" to the solicitation. As long as X Tech submitted Geotest's workshare in one of its responses to the solicitation – which it did – it satisfied the agreement, even if it submitted other responses that did not include Geotest's workshare. X Tech points out that, notwithstanding Geotest's claim that it had no incentive to grant X Tech exclusivity unless such exclusivity was mutual, when the two companies entered the agreement, the only way Geotest could participate was to partner with a small business. The ability to bid was an incentive for Geotest to promise unilateral exclusivity.

We agree with X Tech. The agreement, by its terms, limits only Geotest's ability to team. The fact that it explicitly restricts one party's ability to team but

11

is silent as to the converse ability of the other party  suggests that the restriction is unilateral.  And, as Geotest itself notes, had Geotest not negotiated the agreement, including its teaming limitation, it would have been "sidelined by the small business set-aside" from bidding for the contract.  It thus had an incentive to exchange unilateral exclusivity for the opportunity to be part of the bid.

The agreement does require X Tech to submit Geotest's workshare.  But it does not specify that X Tech must submit this workshare to "any" or "every" or even "its" response to USAF's solicitation.  X Tech is bound to submit Geotest's workshare only in "a" response to the solicitation.  X Tech fulfilled its obligation.  Therefore, X Tech did not breach the agreement, and the district court did not err in granting X Tech's motion for a directed verdict on this issue.

*Breach*

Geotest contends that there was no evidence to support the jury's finding that, by its conduct, Geotest failed to comply with the agreement.  The question of whether Geotest's conduct breached the agreement is a question of fact for the jury.  *See Meek*, 919 S.W.2d at 808.  Because Geotest did not file a motion for directed verdict on this issue at the conclusion of evidence, the jury's finding stands unless there is no evidence to support it.

Geotest argues that the bid it submitted *without* X Tech was not submitted *with* Raytheon.[4]  It claims that it contracted with Raytheon to purchase Raytheon's data; it did not team with Raytheon.  According to Geotest, Raytheon was a licensor, not a teammate.

---

[4]    Geotest also argues, for the first time on appeal, that government regulations preclude contractual restrictions on bidding.  This argument, in addition to being waived, *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009), is incorrect. The regulations prohibit only agreements that restrict "*sales* by . . . subcontractors directly to the Government."  48 C.F.R. § 52.203-6 (emphasis added).  Geotest's ability, as a subcontractor, to sell its equipment to the government is specifically reserved in the agreement: "Geotest may provide prices for the TS-217 tester only (without any software licenses, support or training) to other potential bidders."

However, the jury was presented with evidence that Geotest teamed with Raytheon, including Geotest's use of the term "team" in its technical proposal to USAF to describe its relationship with Raytheon, as well as internal Raytheon emails in which Raytheon characterizes its affiliation with Geotest on the bid as teaming.[5]  This evidence is more than no evidence and is thus sufficient to support the jury's finding.  The district court properly entered final judgment in favor of X Tech based on the jury's verdict.

## CONCLUSION

The district court properly disposed of the parties' motions for directed verdict, and the evidence proffered at trial was sufficient to support the jury's findings.  We AFFIRM the judgment of the district court in full and REMAND to allow the district court to adjudge and award appellate attorney's fees.  X Tech's opposed motion to file a supplemental reply brief and Geotest's motion to file a supplemental brief in response to X Tech's supplemental brief, both carried with the case, are DENIED as moot.

---

[5]  X Tech also cited oral testimony that it alleges provides evidence of teaming.  This evidence is substantially more tenuous than the documentary evidence supporting teaming and is not needed to meet the "any evidence" standard.