**Resa LATIOLAIS, Plaintiff–Appellant**

v.

**Donald CRAVINS, Sr.; City of Opelousas; Claudette Gallow, surviving spouse of Roylis Gallow, Defendants–Appellees.**

No. 13–30972.

United States Court of Appeals, Fifth Circuit.

June 30, 2014.

Bradford Hyde Felder, Esq., Huval, Veazey, Felder & Renegar, L.L.C., Lafayette, LA, for Plaintiff–Appellant.

Frank P. Trosclair, Jr., Esq., Taylor & Associates, Charles Thaddeus Cravins, Special Assistant Attorney General, Charles Cravins Law, LLC, D. Randy Wagley, Esq., Opelousas, LA, Desiree C. Williams–Auzenne, William H. Parker, III, Allen & Gooch, Lafayette, LA, for Defendants–Appellees.

Before SMITH, WIENER, and PRADO, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellant Resa Latiolais appeals the judgment of the district court rendered following a jury verdict that awarded her damages for conspiracy claims arising under Section 1983 of Title 42 of the United States Code ("Section 1983") and Louisiana tort law. Latiolais challenges two of the district court's rul-ings: (1) its judgment as a matter of law ("JMOL") dismissing Defendant–Appellee Donald Cravins, Sr. ("Cravins") from the case; and (2) its denial in part of Latiolais's motion in limine seeking to exclude evidence of her settlement agreement with one of the conspirators. Concluding that the district court erred in dismissing Cravins and in allowing the jury to hear testimony about the content of the settlement agreement, we vacate the district court's judgment, remand Latiolais's action for a new trial, and order the Chief Judge of the Western District of Louisiana to reassign the case to a different district judge.[1]

## I. FACTS AND PROCEEDINGS

This appeal stems from a bitter custody dispute over Cole, the minor son of Latiolais and erstwhile co-defendant Bradley Griffith, with whom Latiolais settled prior to trial. We need not recount in detail the disturbing facts of these parties' travails because a brief sketch will provide adequate context for the matters before us. Laitolais and Griffith were never married, but were involved in a fourteen-year relationship of which Cole was born in November 2001. He resided exclusively with Latiolais for the first several years of his life, with occasional visits and intermittent child support payments from Griffith. In the fall of 2005, Latiolais, Cole, and Lana, who was Latiolais's minor daughter from a former marriage, evacuated in advance of Hurricane Rita, in the company of Latiolais's then-boyfriend, Gregory Chappell, whom she later married. Apparently pricked by jealousy, Griffith filed a petition to establish his paternity of Cole and for sole custody. Latiolais reconvened, seek-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. Latiolais also insists that the jury verdict contains numerous errors. Because we hold that Latiolais is entitled to a new trial, however, we need not reach these issues.

ing sole custody and an order of child support.

Latiolais's instant complaint alleges, and the jury agreed, that Griffith then mounted a protracted vendetta to prove Latiolais unfit to parent Cole by instigating a series of complex and overlapping conspiracies. Griffith's skullduggery included fabricating false arrests, baseless criminal prosecutions, coercion of Lana to make bogus allegations of child abuse, and removal of Cole from Latiolais's home on baseless allegations of child abuse. For example, over the course of several months in late 2005, Griffith caused Latiolais to be (1) investigated for food stamp fraud, (2) investigated twice by the Office of Community Services for child abuse, (3) confronted by police officers on several occasions, (4) charged with simple battery, and (5) reported for criminal damage to property. Griffith recruited a series of co-conspirators by leveraging his business, personal, and political connections.

Of particular relevance to this appeal is the alleged conspiracy between Griffith and Defendant Cravins, a former state senator and current mayor of Opelousas, Louisiana. Cravins admitted in testimony that he had several conversations with Griffith, by phone and possibly in person, in which Griffith solicited Cravins during his tenure as a state senator to intervene with Lafayette Parish Sherriff's Deputy Alex Montgomery ("Deputy Montgomery"), who was then the officer in charge of investigating Latiolais for child abuse. Cravins admitted receiving a $1,000 campaign contribution from Griffith, and further admitted promising and then making a call to Deputy Montgomery sometime between September 2005 and September 2006.

The instant record includes Deputy Montgomery's 2008 state court testimony that Cravins asked him to "help [Griffith] out" on the custody case. Deputy Montgomery further testified in that case that he was angered by Cravins's call.

When he testified in the instant case, Deputy Montgomery reported that he has since suffered from memory problems because of a head injury he sustained late in 2012. Subsequent to the head injury, in June 2013, Deputy Montgomery signed an affidavit, possibly prepared by Cravins's counsel, purporting to explain that Deputy Montgomery had been angry at Griffith, not at Cravins; that he had understood Cravins's request that he "help [Griffith] out" to be a figure of speech; and that he had understood that Cravins was calling him personally as a friend and not officially as a state senator.

A state court trial on the merits of the custody suit began in August 2006, and finally concluded on January 28, 2008. The state trial court entered a written (and later modified) judgment in March 2008, which ordered joint custody, but did not designate a domiciliary parent. Latiolais appealed the trial court's ruling and, two years later, the Louisiana Third Circuit Court of Appeal reversed the trial court and rendered judgment awarding sole custody to Latiolais.[2] The Supreme Court of Louisiana granted Griffith's petition for certiorari, then reversed and remanded for the state district court to reconsider its joint custody plan.[3] After the trial court did so, it designated Latiolais as the domiciliary parent. Latiolais appealed the joint custody award, but the Court of Appeal affirmed.[4]

2. *Griffith v. Latiolais*, 32 So.3d 380 (La.Ct. App.2010).

3. *Griffith v. Latiolais*, 48 So.3d 1058 (La.), *clarified*, 54 So.3d 1092 (La.2010).

4. *Griffith v. Latiolais*, 70 So.3d 71 (La.Ct.App.

On January 1, 2009, Latiolais filed the district court action that is the subject of this appeal, asserting Section 1983 and state law claims against Griffith, Cravins, Officer Roylis Gallow[5] of the Opelousas Police Department, and the City of Opelousas. Each defendant filed a separate motion for summary judgment. In their motions, Gallow and Cravins advanced the defense of qualified immunity. The district court denied the motions for summary judgment filed by Griffith, Officer Gallow, and Cravins, but granted the City of Opelousas's motion in part and denied it in part, dismissing the official-capacity Section 1983 claim but refusing to dismiss the state tort claims. Gallow and Cravins appealed the adverse qualified immunity determinations, but we affirmed in an unpublished per curiam opinion.[6]

Prior to trial, Latiolais and Griffith reached a settlement. The matter proceeded to trial before a jury in August 2013. In an oral ruling, the district court granted in part and denied in part Latiolais's motion in limine seeking to exclude evidence of her settlement with Griffith. After the close of Latiolais's evidence, again ruling from the bench, the district court granted Cravins's motion for a JMOL and dismissed him from the case.

After several days of testimony, the jury deliberated, then returned a verdict in favor of Latiolais and against Griffith and Gallow. The jury found that Griffith and Gallow had entered into agreements to violate Latiolais's constitutional rights in violation of Section 1983 and to commit an illegal or tortious act under Louisiana law. The jury awarded Latiolais $10,647 in damages for the state violation, but nothing for the Section 1983 violation, checking "NO" in response to this question, found under the heading *"Constitutional Claims"*: "Do you find by a preponderance of the evidence that Defendant Roylis Gallow was acting under the authority of state law when he entered into the aforesaid agreement?" The jury also checked "NO" in response to a similar question, found under the heading *"State Law Claims"*:

> Do you find by a preponderance of the evidence that while acting within his discretionary power as a police officer, Defendant Roylis Gallow engaged in state law tortious conduct which was either not reasonably related to the legitimate governmental objective for which his discretionary power existed, or which constituted criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct such that the City of Opelousas is vicariously liable for the conduct?[7]

The court entered judgment in accordance with the jury's verdict, imposing a half share of the damages, or $5,323.50, on Claudette Gallow as surviving spouse of Officer Gallow.[8] The district court denied Latiolais's motions seeking a partial new

2011).

5. After Officer Gallow's death, Latiolais substituted his widow, Defendant–Appellee Claudette Gallow, as a party defendant.

6. *Latiolais v. Cravins,* 484 Fed.Appx. 983, 991 (5th Cir.2012) (unpublished) (per curiam).

7. On appeal, Latiolais does not challenge the jury interrogatories or the jury instructions.

8. Griffith's half share did not become a part of the judgment because Griffith had settled with Latiolais prior to trial, as discussed above. Latiolais suggests that it is no coincidence that the amount of the damages award approximates the amount she expended in attorney's fees in defending herself against the prosecution stemming from Officer Gallow's citation. We need not reach this issue, or Latiolais's other attacks on the verdict, because we vacate and remand for a new trial.

trial and amendment of the judgment. She timely filed a notice of appeal.

## II.  STANDARD OF REVIEW

We review de novo a motion for JMOL, applying the same standard as the district court.[9]  "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper."[10]  But "if reasonable persons could differ in their interpretations of the evidence," a determination of the issue is for the jury.[11]  The facts are viewed, and inferences made, in the light most favorable to the nonmovant.[12]  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."[13]  In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."[14]

We review a district court's evidentiary ruling for abuse of discretion.[15]  "If an abuse of discretion is found, the harmless error doctrine is applied.  Thus, evidentiary rulings are affirmed unless the district court abused its discretion and a substantial right of the complaining party was affected."[16]

## III.  ANALYSIS

### A.  Judgment as a Matter of Law in favor of Cravins

Latiolais insists that the district court erred in granting the JMOL in favor of Cravins.  She had alleged that Cravins conspired with Griffith by agreeing to commit an illegal act in furtherance of Griffith's efforts to deprive Latiolais of custody of Cole. She had alleged further that Cravins tampered with a witness when he called Deputy Montgomery while he was in charge of investigating Latiolais for child abuse, in an effort to influence the officer's testimony at the custody hearing. Latiolais points out that, earlier in this federal case, the original district judge had denied Cravins's motion for summary judgment on this precise issue.[17]

■ The relevant facts, viewed in the light most favorable to Latiolais, are these:  Cravins admitted to several conversations with Griffith, and to the $1,000 contribution to his campaign fund from

---

9.  *X Techs., Inc. v. Marvin Test Sys., Inc.,* 719 F.3d 406, 411 (5th Cir.2013).

10.  *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997) (en banc).

11.  *Bryant v. Compass Grp. USA Inc.,* 413 F.3d 471, 475 (5th Cir.2005) (citation and internal quotation marks omitted).

12.  *X Techs.,* 719 F.3d at 411.

13.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

14.  *Id.* (citations and internal quotation marks omitted).

15.  *King v. Univ. Healthcare Sys., L.C.,* 645 F.3d 713, 719 (5th Cir.2011)

16.  *Kanida v. Gulf Coast Med. Pers. LP,* 363 F.3d 568, 581 (5th Cir.2004) (quoting *Green v. Adm'rs of the Tulane Educ. Fund,* 284 F.3d 642, 660 (5th Cir.2002)).

17.  The Honorable Tucker L. Melançon of the Western District of Louisiana later recused himself from this case, after which it was reassigned to the Honorable Richard T. Haik, who presided at all times relevant to this appeal.

Griffith. Cravins also admitted making the call to Deputy Montgomery after the deputy's investigation was complete but before he testified in the custody proceeding. According to Deputy Montgomery's 2008 testimony, Cravins asked him to "help [Griffith] out," which angered Montgomery because, he testified, he is always fair, no matter whom he is investigating.

Viewed in the light most favorable to Latiolais, and against the background of Griffith's extensive conspiratorial activities targeting her, these facts and the reasonable inferences from them constitute substantial evidence that would have supported a jury's verdict against Cravins. Stated differently, reasonable persons could differ over whether these facts implicate Cravins in a conspiracy. The district court erred reversibly when it denied the jury the opportunity to address this issue.

To be sure, the record also contains arguably substantial evidence that would have supported a jury's verdict in favor of Cravins, including Deputy Montgomery's affidavit and trial testimony indicating that Cravins only asked him to be fair, and Cravins's somewhat similar testimony. Had it been given the opportunity to consider all this evidence, however, the jury would not have been *required* to credit it—especially in light of Montgomery's admitted head injury and memory problems beginning in 2012 and the putatively self-serving nature of Cravins's testimony. More to the point, the existence of substantial evidence on both sides of an issue is a quintessential hallmark of a question for the jury. The district court's grant of judgment as a matter of law was error. Accordingly, we reverse the district court's judgment dismissing Cravins and remand Latiolais's action against him for a new trial.

## B. Admission of Content of Settlement Agreement

As Latiolais had settled with Griffith prior to trial, she filed a motion in limine to exclude all evidence of the settlement. The district court, yet again ruling extemporaneously from the bench, denied the motion in part. The court decided to allow testimony regarding the *fact* of settlement, but not the dollar amount, for the stated purpose of reducing jury confusion as to why Griffith was no longer in the case. Counsel for Cravins then expressed concern that "the jury may infer that [Griffith] settled because he thought he was at fault," and asked the court to allow "a very simple one question, did you admit fault or did you settle just to get this over with." Latiolais's counsel objected that the question would go to the nature and terms of the settlement, after which this colloquy occurred:

Latiolais's Counsel: Your Honor, they have the right to ask [Griffith] questions about what he did and didn't do, get to that issue through his direct testimony ... were you part of the conspiracy, all those sorts of things. They don't need to ask, as part of the settlement negotiations, what did you or did you not agree to.

The Court: I'm going to allow that question. I may regret that later on, but I'm going to allow it. Only for the completeness of the record and the resolution.

I would walk very gingerly with that. It may not be necessary that we take a chance of getting reversed because of that issue. I would be very careful. I don't think it's necessary, but, you know, we may end up trying this case again because of that.

But I—for the completeness of the record, I think that's fair, and I'm going to allow it. Yes.

Latiolais's counsel then renewed his objection for the record.

When Griffith then testified, counsel for Cravins did in fact ask him: "And isn't it also true that, in connection with your settlement of this case, you did not make any admission of wrongdoing?" Griffith answered: "That's correct." The content of Latiolais's agreement with Griffith was also the referent of somewhat more oblique remarks made during closing argument by counsel for the City of Opelousas:

> Importantly, the evidence also shows that Brad Griffith, who was the hub, the center of what the plaintiff refers to as her nightmare, is no longer in the suit. Yet, the City remains, and that's just wrong.

Rule 408 of the Federal Rules of Evidence states, in pertinent part, that "[e]vidence of [a settlement] is not admissible ... either to prove or disprove the validity ... of a disputed claim...." [18] The district court does have discretion to admit evidence of a settlement for other purposes. [19] Pertinent here, we have affirmed a district court's decision to admit the *fact* or *existence* of a settlement so as to reduce jury confusion regarding an absent defendant. [20] We have found "reversible error," however, when a district court has admitted the *content* of a settlement agreement for the jury's consideration. [21]

On appeal, Latiolais insists, as she did in limine before the district court, that the content of the settlement agreement was inadmissible by the plain text of Rule 408 because no exception applied. For its part, the City of Opelousas mentions the admission of the content of the settlement agreement only in passing, focusing its remarks on the fact that the *amount* that Griffith paid Latiolais in settlement was not disclosed and on the danger of jury confusion. [22] The other Defendants–Appellees fail to address this issue in any way.

---

**18.** Fed.R.Evid. 408. The full text of Rule 408 is as follows:

> Rule 408. Compromise Offers and Negotiations
>
> (a) Prohibited Uses. Evidence of the following is not admissible-on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

**19.** *Branch v. Fid. & Cas. Co. of N.Y.*, 783 F.2d 1289, 1294 (5th Cir.1986).

**20.** *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (5th Cir.1986) (citing *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984)).

**21.** *Branch*, 783 F.2d at 1294.

**22.** With regard to counsel's remarks in closing argument, the City of Opelousas cites *Schlesinger v. Wallace*, 513 F.2d 65, 67–68 (5th Cir.1975), for its holding that a district court did not abuse its discretion in allowing defense counsel to refer to a settlement agreement between the plaintiff and an erstwhile co-defendant, and to refer to the amount thereof, in opening statements. Because we hold that the district court erred in allowing Cravins's counsel to ask Griffith about the content of the settlement agreement, we need not address whether the City of Opelousas's reference constitutes a separate violation. We merely observe in passing that *Schlesinger* cannot be read as broadly as the City of Opelousas implies; our opinion interprets its holding in the context of the very peculiar

■ The district court abused its discretion by allowing counsel to question Griffith as to the content or substance of the settlement agreement. The exception to Rule 408 that supports disclosure of the fact of settlement, namely avoiding jury confusion, does not similarly support disclosure of Griffith's failure to admit wrongdoing. The only conceivable relevance of the fact that Griffith did not admit wrongdoing was its tendency to reflect badly on the merits of Latiolais's conspiracy claims, which, of course, is impermissible. Defendants presumably declined to press this point on appeal because they could not invent a non-frivolous argument to support the district court's decision. Furthermore, the defendants do not—and indeed could not—dispute that this violation of Rule 408 affected Latiolais's substantial rights. Accordingly, we reverse the district court's judgment on this issue, and instruct that, on remand, the trial court exclude all evidence of the content of the settlement agreement from the new trial on Latiolais's claims.

## C. Reassignment to a new district judge

We have the power, on remand, to require that a case be reassigned to a differ-

ent judge.[23] This "extraordinary" power is, however, "rarely invoked."[24] We have observed that other circuits have employed two different tests to determine whether a case should be reassigned to a different judge on remand.[25] We have, however, "declined to decide which test we will use, and instead ha[ve] employed both tests."[26]

The first and more stringent test provides:

Absent evidence of personal bias by the trial judge, appellate courts consider three factors in deciding whether to remand a case to a different judge: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.[27]

Under the second and more lenient test, an appellate court will mandate reassignment when the facts "might reasonably

---

facts at issue, which included "the continuing and ongoing context of the eve-of-trial hearing [seeking approval of the settlement] with respect to the ... judgments and the other matters we have mentioned," namely the parties' immediate and ongoing attempts to obtain a tactical advantage from the possible inferences to be made from the fact of settlement. *Id.* Fittingly, in light of the narrow holding, *Schlesinger* has never been cited in nearly forty years—by any court, for any reason.

23. *Johnson v. Sawyer,* 120 F.3d 1307, 1333 (5th Cir.1997) (citing 28 U.S.C. § 2106 ("[A] court of appellate jurisdiction may ... require such further proceedings to be had as may be just under the circumstances.")).

24. *Id.* (quoting *In re John H. McBryde,* 117 F.3d 208, 228–29 (5th Cir.1997)).

25. *In re DaimlerChrysler Corp.,* 294 F.3d 697, 700–01 (5th Cir.2002).

26. *Id.* (citing as examples *United States v. Winters,* 174 F.3d 478, 487–88 (5th Cir.1999) and *Johnson,* 120 F.3d at 1333).

27. *Simon v. City of Clute,* 825 F.2d 940, 943–44 (5th Cir.1987) (footnote omitted) (citing *United States v. Nat'l Med. Enters., Inc.,* 792 F.2d 906, 914 (9th Cir.1986) (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc)); *Bercheny v. Johnson,* 633 F.2d 473, 476–77 (6th Cir.1980)).

cause an objective observer to question [the original judge's] impartiality." [28]

■ Both tests are satisfied here. The presiding judge's comments demonstrate that it would be exceedingly difficult for him to put aside the views he expressed about the evidence against Cravins that we deem substantial. For example, in addition to the judge's comments quoted above, he expressed the intemperate view that "There is no way on God's green earth that there has been any testimony that should hold Donald Cravins into this case. There was none. It was—it is not there. It's not there. It's clearly not there. I heard no evidence, whatsoever . . . ."

We are satisfied that this reassignment is necessary to preserve the appearance of justice and will not entail waste and duplication out of proportion to the improved appearance of fairness. Indeed, regrettably, the waste incident to the tainted first trial is already on the balance sheet. Latiolais deserves a new trial with every reasonable assurance that no further waste of time or assets, and no appearance of bias, will be allowed or countenanced.

## IV. CONCLUSION

We vacate the district court's judgment in its entirety, including its dismissal of Defendant–Appellee Cravins from the case. We also reverse the court's denial of Latiolais's motion in limine that admitted some of the content of Latiolais's settlement agreement with Griffith into evidence. Finally, we remand the case for a new trial, and we direct the Chief Judge of

the Western District of Louisiana to reassign this case to a different district judge.

Judgment VACATED and REMANDED for a new trial after being REASSIGNED.

---

**28.** *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C.Cir.1995) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)); *see also Haines v. Liggett Group, Inc.*, 975 F.2d 81, 98 (3d Cir.1992) (purpose of reassignment is "to avoid both bias and the appearance of bias"), *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir.1989) ("Reassignment is appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public.").